UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENIS LEVIS VALDERRAMA LOPEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN NORTHWEST IMMIGRATION AND CUSTOMS ENFORCEMENT PROCESSING CENTER,<br><br>Respondent. | CASE NO. 2:26-cv-04080-LK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Denis Levis Valderrama Lopez's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons described below, the Court grants the petition.[1]

## I. BACKGROUND

Petitioner is a citizen of Venezuela. Dkt. No. 1 at 3. He entered the United States on April 21, 2024, through the official port of entry in Eagle Pass, Texas, "having prescheduled his appointment with immigration authorities." *Id.* at 4. Following processing by the Department of Homeland Security ("DHS"), Petitioner was issued a Form I-862, Notice to Appear, and was

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

released into the United States "to pursue his defensive Section 240 removal and asylum proceedings." *Id.*; Dkt. No. 2-1 at 2–4. While on release, Petitioner was granted employment authorization, a Social Security card, and a Washington State Driver's License. Dkt. No. 1 at 4. He worked as an Amazon delivery driver and lived with his wife and daughter. *Id.* at 4–5.

On October 13, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") and transferred to the Northwest ICE Processing Center ("NWIPC"). *Id.*

Petitioner filed the present petition on October 23, 2026. Dkt. No. 1. Respondents[2] filed their return on November 6, 2026. Dkt. No. 6. Petitioner filed his traverse on November 13, 2026. Dkt. No. 7.

## II. DISCUSSION

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Based on the petition and Respondents' return, Dkt. No. 6, it appears that Petitioner is subject to 8 U.S.C. § 1225(b), and was likely released on an order of supervision. As described in this Court's order in *Singh v. Mullin*, 2:26-cv-04112-LK, 2026 WL 3569448, at *2–4 (W.D. Wash. Nov. 20, 2026), certain process is due to noncitizens like Petitioner upon revocation of their liberty under Section 1225(b) and its implementing regulations. Among other things, Petitioner asserts

---

[2] Although the warden of the NWIPC has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

that his re-detention "violates the substantive and procedural guarantees of the Fifth Amendment." *Id.* at 6. He seeks immediate release from custody or, in the alternative, a bond hearing before an immigration judge ("IJ") "where the government must bear the burden of proving, by clear and convincing evidence, that continued detention is strictly necessary because Petitioner presents a danger to society or a flight risk[.]" *Id.* at 10. Respondents state that "ICE lacks information as to the mechanism by which Petitioner was released into the United States (i.e., OREC or humanitarian parole)." Dkt. No. 6 at 1. They state that "[a] pre-deprivation hearing did not occur here," and that "ICE cannot respond to Petitioner's request for relief in this matter as it does not have evidence of the method of release." *Id.* at 2.

Pursuant to the principle of party presentation, courts "rely on the parties to frame the issues for decision[.]" *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation modified). In other words, "our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* at 375–76 (citation modified). Because Respondents have not rebutted Petitioner's contention that the government failed to afford him the process due to him upon revocation of his liberty, the Court concludes that Respondents have failed to carry their burden to show why a writ of habeas corpus should not be granted. *See Gabriel v. Bondi*, No. 25-CV-4298 (KMM/EMB), 2025 WL 3443584, at *6 (D. Minn. Dec. 1, 2025) ("Without any suggestion that such a determination [as that required under the statute and regulation] occurred, Respondents could not have complied with § 1182(d)(5)(A) and Part 212.5(e)(2)(i) in revoking Petitioner's parole," and accordingly, "the revocation, and[] . . . Petitioner's detention[] is unlawful.").[3]

[3] *See also Delfin-Ricardo v. Noem*, No. 26-CV-136-RSH-BJW, 2026 WL 353357, at *2 (S.D. Cal. Feb. 9, 2026) ("Courts have determined, in cases where DHS fails to follow its own regulations in revoking humanitarian parole, that the resulting detention is unlawful and the petitioner's release should be ordered."); *Savane v. Francis*, 801 F. Supp. 3d 483, 491–92 (S.D.N.Y. 2025) ("Respondents' revocation of . . . parole under § 1182(d)(5)(A) without any process violated Petitioner's due process rights . . . because [Respondents] did not comply with the statutorily required

## III. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED, and the Court ORDERS as follows:

1. Respondents shall release Petitioner from custody within 24 hours of this Order, subject to the terms of his most recent order of release, if any; and
2. Respondents shall file a Status Report by November 25, 2026, confirming that Petitioner has been released.

Dated this 23rd day of November, 2026.

Lauren King
United States District Judge

process for revoking that parole."); *Orellana v. Francis*, No. 25-CV-04212 (OEM), 2025 WL 2402780, at *7 (E.D.N.Y. Aug. 19, 2025) (reasoning that "by failing to lawfully revoke [Petitioner's] parole, Respondents lacked the authority to arrest Petitioner"), *reconsideration denied in relevant part*, No. 25-CV-04212 (OEM), 2025 WL 2822640, at *4 (E.D.N.Y. Oct. 3, 2025) (finding again that "by failing to lawfully revoke [Petitioner's] parole, Respondents lacked the authority to arrest Petitioner" and reasoning "[a]s such, the revocation of Petitioner's parole was unlawful and his resulting detention invalid"); *Zavorin v. Wamsley*, No. 2:26-CV-00173-DGE, 2026 WL 309733, at *4 (W.D. Wash. Feb. 5, 2026) (granting habeas petition when Respondents revoked Petitioner's humanitarian parole without following the procedural requirements set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i)).